UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE DOE, | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO. 4:25-cv-04341 |
| | § | |
| vs. | § | |
| | § | |
| SAMEH CHAMI AND UBER | § | |
| TECHNOLOGIES, INC., | § | |
| | § | |
| *Defendants.* | § | |

## UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

## I.    INTRODUCTION & ALLEGATIONS

Uber Technologies, Inc. ("Uber") is a technology company that uses its proprietary technology to develop and maintain digital multisided marketplace platforms, including the Rides platform which connects riders with independent drivers and facilitates more than 15 million daily connections. Unfortunately, these connections are not insulated from societal issues, including sexual assault. In her Second Amended Complaint Plaintiff Jane Doe ("Plaintiff") alleges that, on June 28, 2025, after using the rider version of the Uber App to arrange for a ride in Texas, Sameh Chami ("Chami"), an independent driver, sexually assaulted her. *See* ECF # 6, 2nd Am. Compl. ("Compl.") at ¶ 29.

Uber removed this lawsuit to federal court and filed a Motion to Dismiss the First Amended Petition. ECF # 1 and 4. In response, Plaintiff originally sought leave to file an amended complaint but apparently later realized that leave was unnecessary, and she could amend as a right one time. ECF #5 and 6. Plaintiff filed her Second Amended Complaint on October 9, 2025, which mooted the original motion to dismiss. ECF # 6, 7,

1

and 9. Notably, the revisions to the Second Amended Complaint include the dismissal of the vicarious liability and negligent entrustment claims against Uber, and also include a judicial admission that Chami was an independent contractor.

Plaintiff's remaining claims against Uber are negligence and negligent hiring, retention, training and supervision claim. Each of these fails as a matter of law for straightforward reasons. **Negligence:** Uber did not owe a duty to Plaintiff to protect against the criminal conduct of the alleged assailant. **Negligent Hiring, Retention, Training, and Supervision:** Plaintiff fails to allege facts showing that the alleged assailant had a propensity to commit sexual assault or that Uber knew or should have known of this particular unfitness prior to the alleged assault.

Uber's Motion to Dismiss should be granted without leave to amend.

## II.   PLAINTIFF'S ALLEGATIONS

Plaintiff's Second Amended Complaint alleges that, on June 28, 2025, she connected with Chami using Uber's digital network to request a ride to her residence. Compl. at ¶ 29. Plaintiff alleges that, during this ride, Chami sexually assaulted her. *Id*

Plaintiff seeks to hold Uber liable based on two theories. First, she alleges a negligence cause of action. *Id.* at ¶¶ 68-70. But she fails to offer any *factual* allegations establishing that Uber owed a duty to protect her from Chami's criminal conduct. Second, Plaintiff alleges a negligence hiring, retention, training, and screening cause of action. *Id.* at ¶¶ 71-74. This claim is premised on the theory that Uber failed to use reasonable care in screening, training, supervising, and monitoring Chami despite having actual or constructive knowledge that Chami "should not have been operating as a driver and/or posed a risk of harm to riders like Plaintiff." *Id*. at ¶ 72. But Plaintiff's Second Amended Petition is devoid of any *factual* allegations establishing that anything in Chami's background demonstrated that he had a propensity to commit sexual assault— much less, that Uber was on actual or constructive notice thereof.

/ / /

Defendant, Uber Technologies, Inc.'s                                                                     *Doe v. Uber Technologies, Inc., et al.*
Motion to Dismiss Plaintiff's 2nd Am. Compl.

## III.    THE PETITION SHOULD BE DISMISSED

A defendant may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive [such] a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only if the plaintiff alleges enough facts that permit a reasonable inference of liability on the part of the defendant. *Ashcroft*, 556 U.S. at 678; *Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 291 (5th Cir. 2023).

### A.    Each of Plaintiff's Negligence Claims Fail to State a Claim

Both of Plaintiff's negligence claims against Uber should be dismissed for failing to comply with Rule 12(b)(6).

#### 1.    Negligence

Plaintiff's general negligence claim must be dismissed because Plaintiff fails to plead facts establishing the existence of a legal duty. It is well established under Texas law that there is no duty to protect others from the criminal acts of third parties. *Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 12 (Tex. 2008); *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 33 (Tex. App.—El Paso 2006, no pet.). After all, "[c]rime may be visited upon virtually anyone at any time or place . . . ." *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998) (internal quotation marks omitted). Absent a special relationship, Texas does not "shift the responsibility for police protection from law enforcement agencies to the private sector." *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 56 (Tex. 1997) (Owen, J., concurring). Because Plaintiff does not allege such a relationship here, Uber had no duty to protect Plaintiff from the alleged assailant's criminal assault. Therefore, Plaintiff's claim for general negligence must be dismissed.

/ / /

### 2.    Negligent Hiring, Retention, Training, and Supervision

Plaintiff also fails to state a claim for negligent hiring, retention, and supervision. As an initial matter, the Texas Supreme Court has not recognized a cause of action for negligently hiring, retention, training, or supervision even in the employer-employee context—much less, here, where Chami was only an independent contractor (as Plaintiff's Second Amended Complaint concedes). *See* Compl. at ¶ 69; *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010) ("We have not ruled definitively on the existence, elements, and scope of . . . torts such as negligent training and hiring."); *see also Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019) (same and noting similarity that such a claim would have to a negligent entrustment claim); *Campbell v. Racetrac Petroleum, Inc*., No. 3:21-CV-0516-B, 2021 WL 4552253, at *10 (N.D. Tex. Oct. 5, 2021) (collecting cases).

Assuming *arguendo* that such a cause of action exists under Texas law, recent statutory amendments make clear that Section 2402.107 of Texas's Transportation Network Company ("TNC") statute supplies the applicable standard of care for a claim arising from a TNC permitting an individual to log in as a driver on the TNC's digital network. This was confirmed when the Texas Legislature enacted a Section 150E.003(b) of the Texas Civil Practice and Remedy Code, which stands as an explicit pronouncement by the Texas Legislature that Section 2402.107 supplies the applicable standard of care. Critically, in confirming that Section 150E.003(a) did not change existing Texas law with respect to tort liability for direct negligence, Section 150E.003(b) clarifies that Section 2402.107 provides the standard of care for a direct negligence claim against a TNC for allowing an individual to log in as a driver on the TNC's digital network. Tex. Civ. Prac. & Rem. Code § 150E.003(b). Specifically, Section 150E.003(b) states that under Texas law <u>as it already existed</u> a TNC may only be held directly negligent for "**the failure to prevent a driver from logging on to the digital network if**, at the time of the event giving rise to the cause of action, **the company had actual knowledge that the driver**

**was disqualified from logging on to the company's digital network for a reason described by Section 2402.107(b)**, Occupations Code, that occurred after the most recent review of the driver's driving record or criminal background check required by Section 2402.107, Occupations Code." *Id.* This has been the state of the law vis-a-vis direct negligence claims against TNCs since Section 2402.107 was enacted, and (as Section 150E.003(b) confirms) was not affected by Section 150E.003(a)'s new vicarious liability rules.

And even without the Legislature's guidance in Section 150E.003, Texas law is clear that the Legislature's safety standards in Section 2402.107 establish the standard of care for ordinary negligence. In *Nixon*, for example, the Supreme Court concluded that a city's safety ordinance—which imposed safety standards on apartment buildings—"legislatively imposes a standard of conduct which we adopt to define the conduct of a reasonably prudent person." *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985). The Court explained that violation of a statute or ordinance constitutes negligence if the "statute or ordinance was designed to prevent injury to the class of persons to which the injured party belongs." *Id.* Similarly, the Court has "determined that it would be appropriate to base civil liability on a statute [where] the standard of conduct has been clearly defined, and the injury at issue grew directly out of a breach of that standard." *Praesel v. Johnson*, 967 S.W.2d 391, 395 (Tex. 1998).

Here, the purpose of Section 2402.107 is to protect riders (like Jane Doe) by ensuring that drivers satisfy legislatively prescribed safety standards. Section 2402.107 clearly defines a standard, and Plaintiff contends that her injuries arose out of an alleged breach of that standard. Accordingly, Section 2402.107 defines the common-law standard of care for a reasonably prudent TNC. *See also Mo. Pac. R. Co. v. Am. Statesman*, 552 S.W.2d 99, 103 (Tex. 1977) ("Where the Legislature has declared that a particular act shall not be done, it fixes a standard of reasonable care[.]"). Plaintiff does not allege that Uber violated Section 2402.107 in relation to allowing Chami to access Uber's digital

network, and so Plaintiff has failed to state a claim for negligent hiring, retention, training, or supervision.

Even if Section 2402.107 did not supply the standard of care, Plaintiff has still failed to state a claim because, as Plaintiff has admitted, Chami was not Uber's employee; rather, he was an independent contractor in business for himself. *See* Tex. Occ. Code § 2402.114.[1] Where "the performance of the contract requires the independent contractor to drive a vehicle, the person employing the independent contractor is required to investigate the independent contractor's competency to drive." *Ramirez v. Garcia*, 2016 WL 269095, at *3 (Tex. App.—Amarillo Jan. 20, 2016, no pet.) (mem. Op.); *see also King v. Assocs. Com. Corp.*, 744 S.W.2d 209, 213 (Tex. App.—Texarkana 1987, writ denied). Texas courts have repeatedly held that "[t]he possession of a valid, unrestricted driver's license is evidence of a driver's competency absent any evidence to the contrary." *Batte v. Hendricks*, 137 S.W.3d 790, 791 (Tex. App.—Dallas 2004, pet. denied); *see also Magee v. G & H Towing Co.*, 388 S.W.3d 711, 717-18 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Bartley v. Budget Rent-A-Car Corp.*, 919 S.W.2d 747, 752 (Tex. App.—Amarillo 1996, writ denied). Plaintiff does not allege that Chami did not have a valid Texas driver's license, or that Uber failed to verify this fact. Accordingly, Plaintiff fails to allege facts establishing that Uber did not do all that was required at the common law to vet Chami before allowing him to access Uber's digital network.

Even if Uber was required to do more than comply with Section 2402.107 and confirm that Chami had a valid driver's license, Plaintiff would need to allege facts establishing that Uber knew or should have known that Chami had a propensity to commit sexual assault. *Wasson v. Stracener*, 786 S.W.2d 414, 422 (Tex. App.—Texarkana 1990, writ denied); *see also Sugarek v. Bank of Am., N.A.*, No. 2:19-CV-100,

---

[1] *See* Compl. at ¶ 69(g); *see also, Freyer v. Lyft, Inc.*, 639 S.W.3d 772 (Tex. App. 2021) and *Acosta v. Uber Techs., Inc.*, No. 08-24-00099-CV, 2025 WL 1819017, at *5 (Tex. App. July 1, 2025).

**Defendant, Uber Technologies, Inc.'s**                    *Doe v. Uber Technologies, Inc., et al.*
**Motion to Dismiss Plaintiff's 2nd Am. Compl.**

2019 WL 13193216, at *6 (S.D. Tex. Sept. 11, 2019); *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006)).

But Plaintiff's Second Amended Petition is devoid of any specific facts regarding the accused driver other than the wholly conclusory allegation that he was unfit because he assaulted Plaintiff. But, of course, the alleged incident itself cannot have put Uber on notice prior to the incident of any propensity by Chami to commit sexual assault because "an effect cannot precede its cause." *L. Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019); *see also Capece v. Navisite, Inc.*, No. 03-02-00113-CV, 2002 WL 31769032, at *8 (Tex. App.—Austin Dec. 12, 2002, no pet.) (rejecting theory of liability for negligent hiring based on "viewing the facts in retrospect" following the assault and finding that evidence that employees who committed sexual assault had previously engaged "in other unsavory or ill-advised conduct" was insufficient to support such a claim in the absence of evidence that either was prone to commit the crime of sexual assault).

Plaintiff also offers the discriminatory theory that Chami's immigration status might have demonstrated a propensity to commit sexual assault. Compl. at ¶ 45. Absurd. That Chami allegedly overstayed a B-2 visa, even if true, is not sufficient factual basis to support a claim.[2] Just because someone overstays a visa does not mean that they will commit sexual assaults. *See e.g. Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2023 WL 2632803, at *10-12 (E.D. Tex. Mar. 25, 2023) (dismissing negligent training and supervision claim in context of sexual assault of student by fellow student because, *inter alia*, knowledge of assailant's alcohol and drug-related convictions did not put defendant on notice of that he was violent or a sexual predator).

What Plaintiff does not identify is any facts showing that Chami had ever been previously convicted, charged, or even accused of any criminal conduct—much less,

---

[2] Notably missing is an allegation that the TNC statute requires to check immigration status, because it does not. See Tex. Occ. Code § 2402.107. Even if it did there is no allegation that Chami did not satisfy this requirement at the time he gained access to the platform.

criminal conduct that would demonstrate a propensity to commit sexual assault. Instead, Plaintiff falls back on speculation—maybe Chami had a criminal conviction in a foreign country, or maybe someone gave him a low rating before, or maybe in a prior trip he had deviated from the recommended path. *See* Compl. at ¶¶ 37, 39, 41, and 72-73. But Plaintiff does not allege any actual facts establishing that Chami had a prior conviction in some other country or had bad ratings or deviated from the recommended route in prior trips. And low ratings and trip variations can happen for a variety of reasons—so such matters would not actually demonstrate a propensity to commit sexual assault. *Roe*, 2023 WL 2632803, at *10-12.

Given the absence of any alleged facts that—*prior to the alleged assault*—anything in Chami's background would have put Uber on notice that he had a propensity to commit sexual assault, Plaintiff's negligent hiring, retention, and supervision claim must be dismissed. *See Fifth Club, Inc.*, 196 S.W.3d at 796 (claim failed as a matter of law in the absence of evidence putting employer on notice prior to the assault that employee); *Doe v. Boys Clubs of Greater Dallas, Inc*., 907 S.W.2d 472, 478 (Tex. 1995) (claim failed as a matter of law where nothing in assailant's record would have put defendant on notice that he might sexually assault children); *Sugarek*, 2019 WL 13193216, at *6 (granting motion to dismiss negligent hiring, supervision, and training claim based on the absence of allegations showing employees had "previously engag[ed] in any similarly-wrongful conduct"); *cf. Roe*, 2023 WL 2632803, at *10-12.

Tellingly, Plaintiff does not plead facts showing that Uber's alleged failures in vetting the accused driver prior to allowing him access to the Uber App proximately caused Plaintiff's injuries. There is no allegation that, had Uber employed the kind of background checks that Plaintiff claims should have been used, Uber would have discovered anything in Chami's background that would have shown a propensity to commit a sexual assault. *See Campbell*, 2021 WL 4552253, at *11 (granting motion to dismiss negligent hiring and supervision claim where complaint lacked allegations

8

showing that employer's "hiring process negligently failed to discover some information that would have put it on notice that [employee] might foreseeably assault a customer, or that [employer]'s supervision was negligent in some specific way that resulted in the [plaintiffs'] injury.").

### 3. Gross Negligence

Plaintiff failed to state a claim for gross negligence. "To establish a gross negligence claim, Plaintiffs must show: '(1) when viewed objectively from the defendant's standpoint, the act or omission complained of must involve an *extreme degree of risk*, considering the probability and magnitude of the potential harm to others; and (2) the defendant must have *actual, subjective awareness of the risk* involved, but nevertheless proceed in *conscious indifference* to the rights, safety, or welfare of others.'" *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 736 (E.D. Tex. 2011) (emphasis added and internal citations omitted).

"Extreme risk" means a likelihood of serious injury to the plaintiff. *Mobil Oil Corp. v. Ellender*, 968 S.W. 2d 917, 921 (Tex. 1998). And because the "objective gross-negligence standard" must remain "functionally distinguishable" from "ordinary negligence[,]" an "extreme degree of risk" is "a threshold *significantly higher* than the objective 'reasonable person' test for negligence."' *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994) (emphasis added). "An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent." *Medina v. Zuniga*, 593 S.W.3d 238, 249 (Tex. 2019).

"The subjective prong, in turn, requires that the defendant knew about the risk, but the defendant's acts or omissions demonstrated indifference to the consequences of its acts." *In re Bella Corp.*, 648 S.W.3d 373, 385 (Tex. App.—Tyler 2021, no pet.); *Medina*, 593 S.W.3d at 248 ("The plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care.") (quoting *Diamond Shamrock Ref. Co., L.P. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005)). The defendant must have acted

with both a "conscious indifference" and thus "actual subjective knowledge of an extreme risk of serious harm." *Tarrant Cnty. v. Bonner*, 574 S.W.3d 893, 902 (Tex. 2019) (citing *Transp. Ins. Co.*, 879 S.W.2d at 22). "Evidence of simple negligence is not enough to prove either the objective or subjective elements." *Mobil Oil Corp.*, 968 S.W.2d at 921.

Moreover, a "corporation may be liable in punitive damages for gross negligence only if the corporation itself commits gross negligence." *Id.* at 921. Because a corporation can act only through agents, a corporation can only be held liable for gross negligence if a "vice principal" either (1) commits gross negligence; (2) authorizes or ratifies an agent's gross negligence, or (3) is grossly negligent in hiring an unfit agent. *Id.* at 921-22.

Here, Plaintiff offers only a conclusory recitation of the elements of gross negligence without pleading any facts to support the claim. But "[s]imply labeling part of the Complaint 'gross negligence' does not allege a cause of action and is nothing more than a mere 'label[ ] and conclusion [ ]' of the sort rejected by *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955." *Id*. Plaintiff does **not** allege any facts showing that Uber (through a vice principal) took any action or failed to act, which involved an extreme degree of risk, considering the probability and magnitude of the harm to others in relation to allowing Chami access to Uber's digital network. Nor does Plaintiff allege any facts showing that Uber (through a vice principal) took any act or failed to take any act with actual, subjective awareness of the risk involved to Plaintiff, but nonetheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff. Simply put, Plaintiff fails to allege either the objective or the subjective elements of the standard necessary to maintain a gross negligence claim against Uber.

Finally, "[t]he threshold inquiry regarding a gross negligence claim is whether a legal duty existed." *Id*. citing *RT Realty, L.P. v. Tex. Utils. Elec. Co.*, 181 S.W.3d 905, 914 (Tex.App.-Dallas 2006, no pet.). As discussed above, such a duty has not been pled.

Therefore, Plaintiff's claim for gross negligence fails as a matter of law also.

**B.**   **Amendment Would Be Futile**

Because Plaintiff cannot allege facts beyond those asserted because no such facts exist, amendment would be futile, and amendment should not be allowed. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 379 (5th Cir. 2014) (affirming dismissal without leave to amend proper where leave to amend would have been futile because the plaintiffs could not state a plausible basis for relief).

**IV.**   **CONCLUSION**

For the foregoing reasons, Uber's motion should be granted without leave to amend.

Dated: October 23, 2025                     **BOWMAN AND BROOKE LLP**

By: */s/ Luke C. Spencer*
Luke C. Spencer (attorney-in-charge)
SDTX Bar No. 3687666
SBN: 24094960
Adrienne N. Russell
SDTX Bar No. 1152912
SBN: 24064168
5850 Granite Parkway, Suite 900
Plano, Texas 75024
Tel: (972) 616-1767
Fax: (972) 616-1701
Attorneys for Uber Technologies, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record on this 23rd day of October, 2025 in accordance with the Federal Rules of Civil Procedure.

*/s/ Luke C. Spencer*
**LUKE C. SPENCER**